WISCONSIN CHAPTER HOUSE ASSOCIATION OF PHI DELTA THETA, Appellant, vs. REGENTS OF THE UNIVERSITY OF WISCONSIN and another, Respondents.

*November 7—December 4, 1951.*

Randolph R. Conners and Frederick F. Hillyer, both of Madison, for the appellant.

For the respondents there was a brief by the *Attorney General* and *Warren H. Resh,* assistant attorney general, and oral argument by *Mr. Resh.*

GEHL, J. No claim is made that the Board of Regents acted irregularly in the proceedings taken prior to the institution of the condemnation proceedings. The corporation contends, however, that the board was without power to determine the necessity for taking this property in condemnation proceedings.

Sec. 32.07 (2), Stats., provides:

"If the application [for the taking of land in condemnation proceedings] be by . . . a board, . . . the petitioner shall determine the necessity."

The question is: Is the Board of Regents a "board" within the contemplation of the statute? Throughout the statutes dealing with the body it is consistently referred to as a "board." For instance, sec. 36.02 (1), Stats., vests control of the university in a *Board* of Regents; sec. 36.03 provides that the *Board* of Regents shall constitute a body corporate; sec. 36.04 relates to the officers of the *board;* sec. 36.05 deals with the meetings of the *board;* sec. 36.06 (5) authorizes the *board* to acquire land by condemnation proceedings.

The corporation urges that the provisions of sec. 36.03, Stats., establishing the Regents as a body corporate change its character. Our attention has not been called to any authorities which hold as it contends, nor has any reason been suggested why a corporation may not be an agency of the state—a board.

Counsel calls our attention to but one statutory provision which, they contend, indicates a purpose to treat the Regents otherwise than as a board. Sec. 32.02 (1), Stats., designates the agencies which may condemn as ". . . the Regents of the University of Wisconsin, the Board of Regents of Normal Schools, or any public board or commission. . . ." They argue that it is significant that the Regents are not referred to as a board and that the Regents of Normal Schools are. To adopt their reasoning would result in the anomalous situation that the Regents of Normal Schools may determine the necessity for taking and the Regents of the University may not. The statute, standing alone, might permit us to make such distinction, but in determining its effect we may not overlook the many other provisions to some of which we have referred. We conclude that the provisions of sec. 32.07 (2) authorize the Board of Regents to determine the necessity of taking.

The corporation's second contention is stated in its brief as follows: That the Regents do not have authority

". . . to condemn private property to be used as a site for a proposed 'Wisconsin Center Building' when it is contemplated that a private, nonprofit corporation will furnish all of the money for the construction of the building, and will contract for and supervise such construction, and make a gift of the completed building to the university, and when there is no definite agreement or written contract between the Regents and the corporation to accomplish that purpose."

The private corporation referred to is the University of Wisconsin Foundation, a nonstock, nonprofit corporation organized for the purpose of aiding the university by solicitation of gifts, etc. The money required for the project is to be provided by the Foundation. The cost of the entire project is estimated at $2,000,000 of which $1,750,000 is on hand; other funds are available to complete the work. Upon its completion all interest of the Foundation therein will be

relinquished to the university. The Foundation has contracted with architects to prepare plans and specifications which are now in the possession of a joint committee of the Foundation and the Regents.

The statutes clearly authorize the Regents to acquire land for its present purpose. Its petition recites, and it is not disputed, that the building is to be used for adult education, for short courses, institutes, and conferences, including such programs as medical school refresher courses, schools for bankers and industrial managers, agricultural adult short courses and forums, engineering institutes, etc. Sec. 6, art. X, Const., makes provision for the establishment of a state university; sec. 36.01, Stats., establishes the university; sec. 36.03 grants to the Regents powers to accomplish the objects and purposes of the university; sec. 36.06 (5) grants them authority to acquire land by condemnation; sec. 36.062 authorizes them to "encourage scientific investigation and productive scholarship;" sec. 36.13 states the object of the university to be "to provide the means of acquiring a thorough knowledge of the various branches of learning connected with literary, scientific, industrial, and professional pursuits;" sec. 36.14 authorizes the Regents to extend the work of the colleges of letters and science, engineering, agriculture, law, and medicine. These provisions and the authority therein granted do not permit of a doubt that the purpose of the Regents is a lawful one.

The corporation rests its argument principally upon *Schumm v. Milwaukee County,* 258 Wis. 256, 45 N. W. (2d) 673. There, in a proceeding instituted by Milwaukee county to condemn certain lands upon which a corporation organized exclusively for that purpose proposed to erect a memorial center, we held:

(1) The county's corporation counsel was without authority to institute the condemnation proceedings without the adoption by the county board of a resolution therefor;

(2) The county is without authority to condemn land unless the public purpose is clear and its public use is assured;

(3) To justify the taking by the county of private property for a site to be developed by others than the county there must be assurance of the development of the site for public use;

(4) Where, under an agreement which the county, under authority of sec. 45.055, Stats., entered into with a corporation to construct and maintain a memorial project, the county was to acquire the land, to obtain the vacation of certain city streets, and the corporation was to erect and pay for the construction of the memorial, but the project was subject to abandonment if the necessary funds were not raised within a specific time, or if the county could not obtain vacation of the streets, or if the county and the corporation could not agree on plans and specifications, the development of the site for public use was so uncertain that the county's proposed condemnation was not justified;

(5) The county was without power to condemn where, under its agreement with the corporation, the use of the property to be made by the public was to be determined by the corporation or agreed upon between its representatives and the county board, such public use was made conditional; that the public use must be unequivocal and absolute.

None of the circumstances which required us to deny the right of Milwaukee county to condemn the property are present here.

(1) The authority of the Regents to institute condemnation proceedings is not questioned.

(2) The public purpose—education—is clear.

(3) There is more than assurance of the development of the site for public use; it appears to be a certainty, a certainty to the same extent which exists whenever land is taken by an authorized body. The Regents are authorized

to accept gifts such as are proposed by the Foundation to be made. Sec. 36.065, Stats. It is not necessary that the Regents show that they now have the money on hand to complete the project. 29 C. J. S., Eminent Domain, p. 1188, sec. 228; 18 Am. Jur., Eminent Domain, p. 738, sec. 111.

(4) There are no provisions in any agreement for the abandonment of the instant project. The Regents are not restricted or controlled in their action by any arrangement with another agency, nor are there contingencies which would defeat their purpose to complete the project. The Foundation has no interest therein except to aid in accomplishing the purposes of the Regents; having committed itself to the furnishing of the required finances it has no further interest in the matter except to provide its help in planning the venture.

(5) Exclusive control of the project will be in the Regents.

We conclude, therefore, that the Regents have authority to determine the question of the necessity of taking, and that they have authority to condemn the property in question for the purpose intended and under the existing plan.

*By the Court.*—Order affirmed.

MARTIN, J., took no part.